IN RE CAMINITI.

(No. V81-59647—Decided
October 31, 1984.)

Court of Claims of Ohio.

*Keating, Muething & Klekamp* and
*William A. Posey,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney
general, and *R. Kevin Kerns,* for ap-
pellee.

VICTOR, J. This is an appeal from
an order of a three-commissioner panel
which affirmed a single commissioner's
denial of the appellant's claim for work
loss, pursuant to R.C. 2743.51(G).

The appellant, Gerald Caminiti, has
set forth three assignments of error.
The appellant asserts the single commis-
sioner and the three-commissioner panel
erred in finding the appellant did not in-
cur work loss. He also asserts the single
commissioner and the three-commis-
sioner panel erred in failing to consider
the unrebutted testimony of an expert
witness, and improperly used a tem-
porary, part-time job as the basis for the
computation of work loss.

The court finds the assignments of
error are interrelated and will be
discussed concurrently.

On October 23, 1980, Caminiti, age
twenty, was shot in the stomach at
point-blank range and suffered exten-
sive internal injuries that left him a
paraplegic and eighty-five percent oc-
cupationally disabled. Because he is con-
fined to a wheelchair for the rest of his
life, his job options are limited to
clerical, or other types of sedentary
employment. Although he may return to
the work force on a regular basis at
some point in the future, he is presently
unemployed. He suffers from fatigue
and severe emotional problems which
prevent him from holding a job.

In determining work loss, the single
commissioner took into account the ap-
pellant's most recent employment
history.

The appellant was employed by the
Lemcon Development Company as a
construction worker for $4 per hour on
March 26, 1980. On April 4, 1980, he
sustained a back injury while working at
the job site and was unable to complete
the construction job. He applied for

workers' compensation and was granted temporary total disability benefits until January 4, 1981. Those benefits were paid in lieu of wages until the appellant could return to work. He also sought medical treatment from Dr. Patrick J. Brunner, a chiropractor. During the course of treatment with Dr. Brunner, appellant obtained, at the recommendation of Dr. Brunner, a job as a security guard for Allied Security. After only one week on the job, appellant was forced to quit because he was experiencing pain from his back injury.

The single commissioner found the appellant's work loss should be based upon his employment with Allied Security. The commissioner's determination was based on Dr. Brunner's testimony that the appellant's back injury would have prevented him from ever returning to heavy manual labor, and because he would have recovered from his industrial back injury sufficiently to return to "light work" by January 5, 1981. The commissioner stated, "although the applicant was unable to retain his job with Allied Security because of his industrial back injury, I find the applicant would have been able to perform that job, or similar employment, after January 5, 1981, his release date for return to light work." The single commissioner computed the appellant's work loss from January 5, 1981, through April 30, 1983, based on his employment with Allied Security. The appellant's net weekly wage was $78.81 and his total net work loss was $9,536.01. Social Security benefits for that period totalled $8,585.50, for a net loss of $950.51. After the assault, the appellant obtained a job as a travel agent with the First Travel Agency and his earnings between January 5, 1981, and April 30, 1983, totalled $1,053.44. The single commissioner found that all of the appellant's work loss had been recouped from a collateral source or recovered through substitute employment.

At the hearing before the three-commissioner panel, the appellant testified that he had been regularly employed since he was fifteen years old. Since his graduation from high school in 1979, he had been employed in a series of full-time jobs, including the following:

| | | | |
|---|---|---|---|
| Brogan Foltz, Inc. | Laborer | 6 months | $3.50 per hour |
| Crossett Co. | Laborer | 1½ months | 6.70 per hour |
| Hater Ind. | Parts Inspector | 3 months | 4.05 per hour |
| Pillsbury | Grain Unloader | 2 weeks | 6.00 per hour |
| Lemcon Dev. Inc. | Laborer | 1 week | 4.00 per hour |

Dr. George Parsons, an industrial psychologist who performed a battery of tests on the appellant, testified that the appellant showed an interest and an aptitude for employment as a manual laborer. In essence, Dr. Parson's testimony established that despite the appellant's back injury he would have been capable of performing other types of light work, aside from security work. He explained that "light work" in an industrial sense means work in which an individual was not required to lift more than ten to twenty pounds, and would not require excessive bending, stooping, crawling or climbing. He further stated:

"* * * That does not preclude him from working at construction trades. That precludes him from doing general labor work, which would have taken him into the medium to heavy labor work, which would have put him into the fifty (50) pound range to a one hundred (100) pound range * * *. For instance, he

could have certainly been a flagman, working on road construction. That's a light job. Requires a person to stand most of the time, which he could have done * * *. This would have paid him more money than he was making essentially when he stopped. So, he had the physical abilities to return back into the construction trades. He just did not have the chance or opportunity to return to those jobs which would have been of medium or heavy level."

Dr. Parsons also testified that after the assault, the appellant's job opportunities would be limited to clerical work; desk, inspection, or assembly work; or telephone sales. Furthermore, considering the appellant's present need for rehabilitation and adaptation to a new environment, Dr. Parsons estimated that the appellant's starting base salary would be $3.50 per hour.

In addition to Dr. Parsons' testimony the appellant testified that his back injury only temporarily prevented him from working in the construction trades. He stated that the job with Allied Security was just temporary employment until he could find another job. The appellant also testified that he saw himself as an hourly-wage manual laborer.

Despite this testimony, the three-commissioner panel affirmed the single commissioner's determination that the appellant's employment as a part-time security guard should be the basis for calculating work loss.

This decision is rejected for the following reasons. First, the appellant was employed as a part-time security guard while he was still recuperating from his industrial accident. He quit that job because he was experiencing pain in his back. Thus, the panel based his work loss only on a temporary part-time job which he was incapable of performing for any appreciable length of time. Second, the panel failed to consider the appellant's full employment history. Finally, the panel failed to consider the appellant's testimony or the testimony of Dr. George Parsons concerning the likelihood that the appellant would have obtained more remunerative employment despite his previous back injury.

The court finds the appellant's work loss should be based on his employment history from the time he graduated from high school to his employment with Lemcon Development, Inc.

R.C. 2743.51(G) provides, in part:

" 'Work loss' means loss of income from work that the injured person would have performed if he had not been injured * * *."

The court has issued several previous decisions applying the definition of "work loss." Generally, when a victim suffers permanent injury which prevents him from returning to any type of gainful employment or the type of employment for which he was trained, work loss may be granted if the victim was employed or had entered into a contract for prospective employment. See *In re Roquemore* (May 20, 1981), Court of Claims No. V80-32931sc, unreported; *In re Grimmer* (May 19, 1982), Court of Claims No. V81-61978sc, unreported; *In re Green* (Sept. 1, 1978), Court of Claims No. V77-0962sc, unreported; and *In re Nobles* (Feb. 4, 1983), Court of Claims No. V81-51051sc, unreported.

If the victim is unemployed, the court has looked to the victim's history of employment and the probability that he would have returned to employment had he not been injured.

In *In re Steiner* (June 12, 1980), Court of Claims No. V77-0827jud, unreported, the victim was operating a tow-truck business when the criminally injurious conduct occurred. However, he could not show he derived any income from the business. A three-commissioner panel granted an award of work loss based upon his previous employment as a social worker over one year prior to the assault. In reversing the

panel, the judge stated the panel's "assumption" the victim would have returned to a career in social work "grossly speculative" and unsupported by the record.

Similarly, work loss was denied in two claims where the victims were relatively young and did not have a definite history of employment. In these cases, however, the court indicated that a solid work history is a crucial factor in determining a victim's entitlement to work loss. See *In re Timlin* (April 28, 1980), Court of Claims No. V78-3557jud, unreported; *In re Cornell* (Oct 26, 1981), Court of Claims No. V79-3792jud, unreported. The problem in the *Timlin* and *Cornell* claims was that the victims were unemployed and unable to show a past "work-life style" that could be projected into the future to establish a loss of income. See, also, *In re Rutter* (Oct. 20, 1981), Court of Claims No. V79-3758sc, unreported.

Thus, while claims for work loss were denied in the above cases, the court recognized that where the victim has a history of employment, and there is the likelihood the victim would have returned to work had he not been injured, that a solid basis has been established upon which to predicate a work loss claim.

The Attorney General argues that the holdings in *In re Clark* (May 8, 1984), Court of Claims No. V82-32238jud, unreported, and *In re Russell* (April 19, 1984), Court of Claims No. V80-47882jud, unreported, preclude an award in the instant claim. The Attorney General's reliance on *Russell* and *Clark* is misplaced. In *Russell,* the victim was only temporarily disabled as a result of his injury and was unable to show other prospective employment. This holding follows previous decisions involving self-employed persons who were temporarily disabled because of their injuries. The holding in *Clark* also follows previous decisions in which work loss

was denied where the victim was temporarily disabled, unemployed, and presented no evidence of prospective employment. Although the judge properly denied work loss based upon the record before him, the appellant could have established work loss by showing that her disability prevented her from obtaining work, or that she had otherwise been disqualified from obtaining work as a typist. See R.C. 2743.51(E).

Here, the appellant is a high school graduate, and was steadily employed up until the time of his industrial accident, when he began receiving temporary total disability benefits. In light of this fact, the court cannot conclude for the purpose of this determination that the appellant was unemployed, as were the victims in *Timlin* and *Cornell.* Furthermore, he had demonstrated an interest and ability in working as a manual laborer. In this capacity he obtained jobs paying between $3.50 to $6.70 per hour. Therefore, it is reasonable to assume that as soon as his health permitted, the appellant would have obtained some type of employment, other than as a security guard, that paid more than $3.50 per hour. It is undisputed that the appellant has a solid work history even though he had been out of high school just over one year when the injury occurred. Prior to the assault he had established a "work-life style" that is indicative of productivity which can be projected into future economic loss. Furthermore, after reviewing the record, one cannot help but recognize the appellant's desire to work and to be a self-supporting and productive member of society. This is emphasized by the fact that even after the assault he attempted to rehabilitate himself and find suitable employment.

To determine the appellant's work loss, the court finds it is necessary to average the hourly wages he received prior to sustaining his injuries. Although this approach has not previously been

used for determining work loss, there is some authority for using this method. In *In re Walker* (July 29, 1983), Court of Claims No. V81-55111tc, unreported, a three-commissioner panel averaged the decedent's net income for five years to obtain the amount to be used as the basis for the computation of dependent's economic loss, as defined in R.C. 2743.51 (I). Although dependent's economic loss is subject to broader interpretation than work loss, this court is of the opinion that the same approach should apply to the determination of the appellant's work loss. The court finds the appellant's work loss should be based on an hourly wage of $4.85.

The appellant was twenty years old at the time of the assault. His remaining work-life expectancy is forty-five years. His net yearly income would be approximately $8,500. That amount is reduced by $6,500 per year in collateral source benefits, for a total work loss of $2,000 per year. Assuming the appellant would lose at least $2,000 per year in income over the next forty-five years, his total work loss is $90,000. (That result was reached without applying a growth rate or reducing the work loss to present value.) The court finds it to be in the appellant's best interests to commute his projected work loss and to grant him the maximum award of reparations in the amount of $50,000. See *In re Birdsong* (March 5, 1984), Court of Claims No. V77-0381sc, unreported, and *In re Vasiliou* (May 10, 1984), Court of Claims No. V79-37090sc, unreported.

Therefore, the decision of the panel of commissioners is reversed and judgment will be entered in favor of the appellant in the amount of $50,000.

*Decision reversed.*