[Cite as *In re Becraft*, 2010-Ohio-6718.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: RICHARD E. BECRAFT

RICHARD E. BECRAFT

　　　　Applicant

Case No. V2009-40862

Commissioners:
Elizabeth Luper Schuster, Presiding
Gregory P. Barwell
Randi M. Ostry

ORDER OF A THREE-
COMMISSIONER PANEL

---

{1}On June 19, 2009, the applicant, Richard E. Becraft, filed a compensation application as the result of an assault which occurred on May 26, 2009.　On September 9, 2009, the Attorney General issued a finding of fact and decision determining the applicant met all jurisdictional requirements necessary to receive an award of reparations and was granted an award in the amount of $2,403.59 of which $1,793.80 represented reimbursement of medical expenses, $17.29 represented reimbursement of pharmacy expenses, and $592.50 represented attorney fees incurred for obtaining a civil protection order.　The applicant's claim for reimbursement of medical bills at Miami Valley Hospital and Springfield Regional Center was denied because the Attorney General asserted the applicant could receive reimbursement for these expenses from the Hospital Care Assurance Program (HCAP).　Finally, the applicant's claim for work loss was denied since this loss could not be verified.

{2}On October 5, 2009, the applicant submitted a request for reconsideration asserting he did experience work loss as the result of the injuries he sustained at the time of the criminally injurious conduct.　On December 1, 2009, the Attorney General

rendered a Final Decision finding no reason to modify the initial decision with respect to work loss.

The Attorney General contended due to inconsistencies in the applicant's work history his 2009 income tax return was necessary before work loss could be calculated. On December 18, 2009, the applicant filed a notice of appeal from the December 1, 2009 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on March 17, 2010 at 11:00 A.M.

{3}The applicant, Richard Becraft, and his attorney, Robert Vaughn, appeared at the hearing, while the state of Ohio was represented by Assistant Attorneys General Matthew Karam and Matthew Hellman.

{4}The sole issue in this case is the amount of work loss suffered by the applicant as a result of the injuries he sustained at the time of the criminally injurious conduct.

{5}The applicant, Richard Becraft, was called to testify. He stated he was self employed as a commercial contractor and in the past few years, however, due to the economic downturn, his business slowed. As a result he has had to transform his business into one that provides residential maintenance and tree cutting.

{6}Mr. Becraft described the assault, the injuries he sustained, and the long term effect those injuries had on his ability to engage in gainful employment. In fact, the applicant stated he has been unable to work since the date of the criminal assault, May 26, 2009. Even though the applicant has been unable to work, his business has incurred ongoing expenses. He related he has a bank note which needs to be paid in the amount of $4,700.00, for business equipment. Furthermore, he stated although his 2009 tax return has not been filed, he is confident that he will experience a financial loss, due to the fact he was unable to work after May 29, 2009.

{7}Upon cross-examination, Mr. Becraft stated he has a monthly house payment and living expenses. He also has ongoing contracts with Speedway and Super America. Whereupon, the testimony of Mr. Becraft was concluded.

{8}The Attorney General called William Fulcher, Assistant Section Chief for the Crime Victims Unit of the Attorney General's Office, to testify. Mr. Fulcher testified concerning how work loss is calculated when income generated involves self-employed individuals. First, it is desirable to obtain the tax return of the victim for the year of the injury to verify that the applicant is in the same business. Also, the tax return is the best indication of what the applicant was earning at the time of his injury. In the case at bar, the 2009 tax return had not yet been filed, accordingly, the last verified tax return was 2007, which indicated the applicant's business suffered a loss.

{9}The Attorney General introduced State's Exhibit A, a memorandum prepared by Mr. Fulcher on March 2, 2010. Self employment income was calculated by adding Line 31 of the applicant's income tax return(net profit or loss) to Line 13 (depreciation), and Line 9 (car and truck expenses). In 2005 the applicant's net profit was $161,541.00, in 2006 it was $74,194.00, in 2007 the applicant suffered a net loss of $8,647.00; and, in 2008 the applicant had a net profit of $13,044.00. Mr. Fulcher testified there was nothing consistent about the applicant's past years of employment which would give a good indication what the applicant's income would have been in 2009. However, the Attorney General chose years 2007 and 2008 to calculate the applicant's work loss for 2009. Using the formula above: (Line 31 + depreciation + car and truck expenses = net income) the applicant had a net income of $1,763.00 in 2007 and $18,918.00 in 2008 for an average net income of $10,340.50. Those years were chosen because gross sales in these years were consistent even though profits were not. The years 2005 and 2006 were not chosen because gross sales were much higher in those years. Finally, Mr. Fulcher stated that 2005 and 2006 incomes were not used because these years were prior to the economic downturn which effected the construction business. Based on these calculations the applicant incurred work loss in 2009 in the amount of $3,969.81.

{10}The witness then presented State's Exhibit B, a work loss exhibit reflecting salary information for the applicant. This exhibit shows the work product of Mr. Fulcher in calculating the applicant's work loss of $3,969.81. The direct examination of the witness was concluded.

{11}Upon cross-examination, Mr. Fulcher stated that two, three, or four years can be used as an average if the earnings are consistent. However, the best evidence is to look at the year of the injury. Mr. Fulcher admitted there is no written policy to determine the number of years used to determine an income average. The decision is based on the availability of the evidence and his discretion based upon his years of experience. He did concede that this policy could be considered arbitrary. Whereupon, the witness' testimony was concluded.

{12}In closing, the applicant stated that due to the nature of the construction business, a variety of factors may influence the amount of money an applicant makes depending on the time of the injury. While, work loss based on the tax return on the year of the injury might provide some indication of the applicant's earnings for that year, it would be more equitable to take an average of his earnings in prior years. The applicant contends a true reflection of his average earnings should be based upon as many years as are available. In this case 2005, 2006, 2007, and 2008. The applicant asserts that the Attorney General should base its calculation on its past practices of looking back at least three years and determining an average and then calculating the work loss in the year of the injury based upon that average.

{13}The Attorney General in closing stated that a calculation of work loss should be based upon the language of the statute. The Attorney General stated the three year method was not used in *In re Groll*, V2007-90374tc, 2007-Ohio-6287 and *In re Lemieux*, V2004-60920tc. Accordingly, there is not uniform rule applied to everyone. The best way to calculate work loss for a self-employed individual is to look at the tax returns of the year of the injury. Without that return, the next best indicator would be the applicant's earnings from 2007 and 2008. To extend back to 2005 and 2006 would

not give an accurate reflection of the economic situation in 2009. Whereupon, the hearing was concluded.

{14}R.C. 2743.51(G) states:

"(G) 'Work loss' means loss of income from work that the injured person would have performed if the person had not been injured and expenses reasonably incurred by the person to obtain services in lieu of those the person would have performed for income, reduced by any income from substitute work actually performed by the person, or by income the person would have earned in available appropriate substitute work that the person was capable of performing but unreasonably failed to undertake."

{15}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{16}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{17}From review of the case file and with full and careful consideration given to the testimony presented and the arguments advanced by counsel, we find the applicant incurred work loss. However, the difficult issue which we must address is what method will result in a fair and just award to the applicant. The applicant asserts we should rely on the past practice of the Attorney General and use three or possibly four prior years of the applicant's self-employment to determine a yearly income average, then use that average to calculate his earnings for 2009. On the other hand, the Attorney General directs us to only consider the income the applicant earned in 2009, prior to his injury. If that information is not available, as it is not in this case, then look to the last two years prior to his injury.

{18}Before the proper method of calculation is determined in this case, it is important to review case precedent. In *In re Caminiti* (1984), 17 Ohio Misc. 2d 9, a judge of the court of claims reasoned that while the language of the statute seemed to indicate that a calculation of work loss should be based on the victim's earnings at the time he was injured, such calculation would provide an unjust result for an individual so seriously injured that he would never be able to enter the work force again. In *Caminiti* the victim's work history was evaluated since at the time of his injury he was receiving temporary total disability benefits. The judge relied on *In re Walker*, V81-55111tc (7-29-83), a dependent's economic loss case where a panel of commissioners averaged the decedent's income for five years to determine a proper basis for calculating dependent's economic loss. Accordingly, the judge in *Caminiti* averaged the victim's hourly wage earned from his last five jobs to reach a fair basis for calculating the victim's future work loss.

{19}A panel of commissioners in *In re Zenni* (1992), 63 Ohio Misc. 2d 68, dealt with the appropriate period to calculate the decedent's work loss when the decedent entered into a new unsuccessful business venture prior to his death. Decedent had worked for eight years in the Hamilton County Clerk of Courts Office, when he opened a restaurant. The restaurant failed after two years and the decedent was in the process of receiving his real estate license when he was killed. In coming to a conclusion concerning the calculation of dependent's economic loss, the panel stated:

{20}"That the decedent contributed things of economic value is implicit in the fact that he acquired investment real estate during his years with the clerk's office of sufficient value to generate income during later years when he was unemployed. This contribution is in addition to the income the decedent earned while working at the clerk's office. Thus, even after the failure of his business, the decedent's work ethic and employment history continued to provide economic contributions to the household. Furthermore, the foregoing definition contains no language that would limit dependents'

economic loss to only those contributions of economic value made within the two years immediately preceding the victim's death.

{21}"These factors, upon calculation, reveal whether the dependents of the decedent will suffer economic loss. Whether that economic loss should be based upon a two-year or five-year work loss history is dependent upon the facts of the case. In this case, it is reasonable to reach back five years to obtain an average income upon which to calculate dependents' economic loss. In fact, it would be unfair to discount the decedent's employment history with the clerk of courts because the income he earned there was the basis for his later career change. In addition, the decedent could have returned to that employment, as evidenced by the applicant's testimony." Id. at 70-71.

{22}In *In re Dotson* a panel of commissioners dealt with the issue of work loss when the applicant left his $22,000 a year job as a stock broker with A.E.I. Group Inc. to work with OMNI Financial Management to restructure an inactive intrastate brokerage house, Columbia Securities. The applicant received no salary for this position, however, when Columbia became active he would become president and general manager and earn a projected salary of between $100,000.00 to $150,000.00 per year. Before this goal could be accomplished the applicant became a victim of criminally injurious conduct. During his period of disability he earned $12,000.00 for a four-month period in 1989 with Dublin Securities and $25,000.00 in commission for a three-month period in 1990 with the same company. The applicant's disability period encompassed December 28, 1988 through December 20, 1989. Accordingly, the panel averaged the applicant's earnings prior to and after his injury to calculate a reasonable work loss for the disability period in question.

{23}A panel of commissioners in *In re Jeffcut*, V2002-51451tc (4-21-04) addressed the correct method of calculating work loss in a long-standing bridal partnership business. While the business remained open during the applicant's disability period, the panel relied on the applicant's accountant to provide the applicant's

actual sales during the disability period as opposed to the projected sales during the same period.   These figures were considered reasonable based on the age and size of the company in question.   The panel focused on a three-year disability period calculating the difference between actual sales and projected sales and reducing that amount by the cost of merchandise.   The three year loss was divided in half since the applicant had another partner running the business in his absence.   This method provided an accurate reflection of the applicant's work loss in a long-term, relatively steady income-producing business.

{24}A panel of commissioners was confronted with work loss sustained in a long-standing tree service business in *In re Groll*, V2007-90374tc (10-26-07).   In that case, the applicant was a victim of criminally injurious conduct in 2006.   In order to fairly calculate work loss the panel reviewed the applicant's net profits for four years prior to his injury and took into consideration that he had depreciated a truck purchase he made in 2005 in one year rather than his prior business practice of depreciating such purchases over a five-year period.   Accordingly, the panel calculated the applicant's average net profit over a four-year period and a revised net profit for 2006, the year of his disability, recalculating his depreciation of his truck on a five-year basis.   The revised profit for 2006 was subtracted from the four-year net average profit to result in the applicant's work loss for 2006.

{25}In *In re Austin*, V2006-21182tc (3-26-08), a panel of commissioners was required to calculate work loss in a start up business.   The panel adopted the Attorney General's method of calculation by taking the net profits from Line 31 of the applicant's Schedule C tax return and adding vehicle expenses.   However, the panel felt a 3.5 percent yearly increase in earnings was appropriate.   The panel rejected the reasoning set forth in *In re Jeffcut* because that applicant's business was not long standing with an extensive business history.

{26}Finally, a panel decided the case of *In re Lemieux,* V2004-60920tc (2-13-09). That case determined that work loss could be established based upon affidavits the applicant's testimony, and tax returns, without a 1099 attached.

{27}In the case at bar, the Attorney General urges us to consider a factor not addressed in prior cases: economic downturn. Should the economic weakness in the applicant's profession effect the calculation of work loss? In *Zenni* and *Dotson*, the venture into different fields of work did not negatively affect the calculation of an award for work loss since prior or post earnings were considered to obtain a fair work loss amount. Businesses with steady growth or extensive history provide little insight into the case at bar. See *Jeffcut* and *Austin*. *In re Groll* provides limited insight into the case at bar. In *Groll* it was recognized that changes in depreciation schedules should be taken into consideration when calculating work loss.

{28}R.C. 2743.51(G) in pertinent part states: "'Work loss' means loss of income from work that the injured person would have performed if the person had not been injured." The plain language of the statute indicates that the current earning capacity of the applicant at the time he was injured is the best evidence of his work loss. In the case at bar, the applicant's 2009 income tax return is not available. Therefore, we believe the best evidence of the applicant's work loss for 2009 is the Line 31 net profit from Schedule C plus depreciation, ($13,044.00 + $5,874.00 = $18,918.00). To include the tax return from 2007 unfairly penalizes the applicant while the inclusion of tax years 2005 and 2006 does not reflect the economic reality of 2009, the year of his injury.

{29}It should be noted that all claims should be decided on a case-by-case basis to afford each applicant a just work loss award depending on their unique and individual circumstances. Death claims and claims involving individuals who are totally disabled are more appropriate for income averaging over a number of years in conformity with case precedent.

{30}Therefore, the December 1, 2009 decision of the Attorney General is reversed with respect to the issue of work loss.

IT IS THEREFORE ORDERED THAT

{31}1)   The State's Exhibits A and B are admitted into evidence;

{32}2)   The December 1, 2009 decision of the Attorney General with respect to work loss is REVERSED and judgment is rendered in favor of the applicant;

{33}3)   This claim is remanded to the Attorney General for calculation and payment of work loss in accordance with this decision;

{34}4)   This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{35}5)   Costs are assumed by the court of claims victims of crime fund.

_____
ELIZABETH LUPER SCHUSTER
Presiding Commissioner

_____
GREGORY P. BARWELL
Commissioner

_____
RANDI M. OSTRY
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2010\Sept - Nov 2010\V2009-40862.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Clark County Prosecuting Attorney and to:

Filed 11-19-10
Jr. Vol. 2277, Pgs. 93-103
Sent to S.C. Reporter 10-11-11