[Cite as *In re Roukey*, 2023-Ohio-3342.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| IN RE:  KRISTOPHER R. ROUKEY | Case No. 2022-00799VI |
| RACHEL ROUKEY<br>LEE BLANKENSHIP | Magistrate Daniel R. Borchert |
| Applicants | <u>DECISION OF THE MAGISTRATE</u> |

{¶1}    On May 2, 2021, Kristopher Roukey, victim, was shot and killed while working as a driver for Lyft.  He was transported to a local hospital, where he was pronounced dead. Rachel Roukey, Kristopher's wife, and Lee Blankenship (collectively "applicants") filed a compensation application with the Ohio Attorney General on August 27, 2021.  Applicants sought reimbursement for medical expenses, counseling, lost wages, funeral and burial, lost financial support for victim's dependents, and items held as evidence.

{¶2}    On December 24, 2021 the Attorney General issued a finding of fact and decision denying applicants' claim because, although Kristopher was a victim, applicants did not submit the proper documentation in order for the Attorney General to calculate their economic loss.   On January 23, 2022, applicants submitted a request for reconsideration.  Therein, counsel for applicants wrote, "Documents to be uploaded to Portal."

{¶3}    On October 19, 2022, the Attorney General rendered a Final Decision, in which the Attorney General stated that the Finding of Fact and Decision would not be modified because applicants did not provide the proper documentation in support of work loss or documentation regarding Bureau of Workers' Compensation benefits or Lyft insurance.  On November 18, 2022, applicants filed a notice of appeal from the Final Decision of the Attorney General.  Hence, a hearing was held before this magistrate on April 18, 2023.  Assistant Attorney General Candice Suffren appeared on behalf of the State of Ohio.  Matthew Shaughnessy appeared on behalf of applicants.

{¶4}    Rachel Roukey testified that she was married to Kristopher for 19 years. They had two kids together.  She testified that Kristopher began working for Lyft in 2020. Because he was an independent contractor, Lyft issued him a 1099 instead of a W-2. Rachel identified applicants' exhibit 1 as a true and accurate copy of the taxes she filed from 2016 to 2021, including the W-2s and 1099s from all of their employments.  She testified that she called the IRS twice to try to obtain tax transcripts from the IRS, but the IRS sent them a letter denying each request.  She explained that the IRS phone system did not allow her to talk to a person.  A denial letter from the IRS is applicants' exhibit 2. The parties stipulated that the Attorney General has both applicants' exhibits 1 and 2.

{¶5}    Rachel further testified that she did not file a claim with the Bureau of Workers' Compensation because Kristopher was an independent contractor.  She also clarified that she has not received anything from Lyft, Kristopher's employer at the time of his death.  She is not aware of any insurance from Lyft that would have compensated the family.

{¶6}    The Attorney General called Julie Duerr as a witness.  Duerr is an economic loss investigator for the Crime Victim Section of the Attorney General's Office.  Duerr testified that she did not receive copies of the tax transcripts from the IRS, which is what the Attorney General usually uses to verify earnings.  Without the tax transcripts, she was unable to verify the reported earnings from the 1040s that applicants submitted. Accordingly, she was unable to calculate economic loss.

{¶7}    During cross-examination, when asked if the numbers on 1040s are different from the numbers on tax transcripts, Duerr testified that she does not know without the tax transcripts.  When asked if there is any number that is typically on the tax transcripts that is not normally on a 1040, Duerr answered that she does not know since she has not seen the tax transcripts in this case.  Duerr admitted that the Attorney General's Office used to accept 1040s from a claimant in order to claim work loss, but they can no longer do that because the Social Security Administration has become stricter on not giving out the information.  She further admitted that the recently submitted tax records include all of the attachments needed to calculate work loss, if the Attorney General's Officer were able to verify the numbers.  When asked if there was anything that

causes her to believe that the information provided is not accurate, she answered that she did not know.

{¶8}    No further witnesses were called.  Applicants argued in closing that the Attorney General has all of the information they need and no reason to believe that the records provided are not accurate.  The applicants have therefore met their burden of providing the records needed to calculate work loss.  In the absence of evidence indicating that the income was something other than what the submitted documents show, applicants have met their burden of proving work loss by a preponderance of the evidence.  Additionally, there are no collateral sources because an independent contractor is not eligible for workers' compensation and, to the best of applicants' knowledge, there is no applicable insurance provided by Lyft.

{¶9}    The Attorney General argued in closing that applicants have not satisfied their burden of proving the amount of work loss.  Revised Code 2743.59(B) says that the Attorney General may require the applicants to supplement the application with relevant information.  The Attorney General never received a letter from the IRS stating why the IRS will not give the applicants the information they need to submit.  Whereupon, the hearing was concluded.

{¶10}   R.C. 2743.52(A) places the burden of proof on an applicant to satisfy the Court of Claims that the requirements for an award have been met by a preponderance of the evidence.  *In re Rios*, 8 Ohio Misc. 2d 4, 455 N.E.2d 1374 (Ct. of Cl. 1983).

{¶11}   Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause.  The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."  Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶12}   The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  The court is free to believe or disbelieve, all or

any part of each witness's testimony. *State v. Antill*, 176 Ohio St. 61, 197 N.E.2d 548 (1964).

{¶13} There are two elements necessary to prove work loss. First, one must prove work loss was sustained by showing an inability to work. Second, one must prove the monetary amount of work loss. Both elements must be proven by corroborating evidence. *In re Berger*, 91 Ohio Misc.2d 85, 698 N.E.2d 93 (Ct. of Cl.1994). Additionally, self-employment income must be calculated "on a case-by-case basis to afford each applicant a just work loss award depending on their unique and individual circumstances". *In re Becraft*, Ct. of Cl. No. V2009-40862tc, 2010-Ohio-6718, ¶ 29. The current earning capacity of the victim at the time of his death is the best evidence of work loss. *Id*. at ¶ 28.

{¶14} It is undisputed that Kristopher was a victim of crime and that he is now unable to work. The issue in dispute is whether applicants have proven the monetary amount of work loss by corroborating evidence. Upon careful review of the case file, applicants' testimony, and the arguments made by the parties, I conclude that applicants have satisfied their burden of proving the monetary amount of work loss.

{¶15} The Attorney General acknowledged that it has received the tax information, including W-2s and 1099s, identified as applicants' exhibit 1. Although the Attorney General's witness testified that it was not the best evidence of the victim's past earnings, the Attorney General has not shown that any information provided by the applicants is inaccurate. I therefore conclude that applicants have met their burden. *See In re Butler*, Ct. of Cl. No. V89-83822tc (November 8, 1991) (work history was established by evidence, notwithstanding the victim's failure to file tax returns and pay taxes on a regular basis).

{¶16} The Attorney General also denied the application because applicants failed to provide (1) "Lyft insurance coverage information" and (2) "Outcome of claim filed with the Bureau of Worker's Compensation." (Memorandum, Record, p. 32.) The Attorney General argued that it needed the information in order to verify whether applicants were entitled to compensation from collateral sources. The version of R.C. 2743.51 applicable to this case defines "collateral source" as follows:

"'Collateral source' means a source of benefits or advantages for economic loss otherwise reparable that the victim or claimant has received, or that is readily available to the victim or claimant, from any of the following sources:

* * *

"(5) Workers' compensation

* * *

"(7) Proceeds of a contract of insurance payable to the victim for loss that the victim sustained because of the criminally injurious conduct;

* * *

"(9) That portion of the proceeds of all contracts of insurance payable to the claimant on account of the death of the victim that exceeds fifty thousand dollars;"

{¶17} R.C. 2743.51(B).

{¶18} However, Rachel credibly testified that they are not aware of any insurance provided by Lyft that would compensate the family. She also credibly testified that she did not file a claim with the Bureau of Workers' Compensation because Kristopher was an independent contractor. "Workers' compensation is limited to 'employees' and their dependents. An independent contractor is not an 'employee' for the purposes of workers' compensation law." *Dailey v. Trimble*, 10th Dist. Franklin No. 95APE07-951, 1994 Ohio App. LEXIS 6120, 6 (Dec. 29, 1995). Therefore, the undersigned concludes that applicants are not entitled to any benefits from collateral sources.

{¶19} In summary, applicants have proven the monetary amount of work loss and that they are not entitled to any benefits from collateral sources. Accordingly, I recommend that the Attorney General's Final Decision of October 19, 2022, be REVERSED, and that the case be REMANDED to the Attorney General for calculation of an award in accordance with this decision.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of*

*any factual finding or legal conclusion, whether or not specifically designated as finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


DANIEL R. BORCHERT
Magistrate

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to:

Filed 6/1/23
Sent to S.C. Reporter 9/20/23

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| IN RE:  KRISTOPHER R. ROUKEY | Case No. 2022-00799VI |
| RACHEL ROUKEY<br>LEE BLANKENSHIP | Judge Lisa L. Sadler |
| Applicants | <u>ORDER</u> |

{¶21}  On April 18, 2023, a hearing was held in this matter before a Magistrate of this court.  On June 1, 2023, the Magistrate issued a Decision wherein he found that applicants satisfied their burden of proving the monetary amount of work loss and that they were not entitled to any benefits from collateral sources.  Therefore, the Magistrate recommended that the Attorney General's Final Decision of October 19, 2022 be reversed and that the case be remanded to the Attorney General for calculation of an award.

{¶22}  Civ.R. 53(D)(3)(b)(i) states, in part: "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i)."  No objections were filed.

{¶23}  Upon review of the claim file, and the Magistrate's Decision, it is the Court's finding that the Magistrate was correct in his analysis of the issues and application of the law.  Accordingly, this court adopts the Magistrate's Decision and recommendation as its own.

{¶24}  IT IS HEREBY ORDERED THAT

{¶25}  The June 1, 2023 Decision of the Magistrate is ADOPTED;

{¶26}  This claim is REMANDED and judgment entered for applicant;

{¶27}  Costs assumed by the reparations fund.

_____
LISA L. SADLER
Judge


     A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Summit County Prosecuting Attorney and to:

Filed 6/7/23
Sent to S.C. Reporter 9/20/23